UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SANDRA GREEN,

        Plaintiff,                                  Hon. Richard Alan Enslen

v.                                                Case No. 1:05-CV-612

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.

The Commissioner determined that Plaintiff is not disabled as defined by the Act. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

## **STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

### PROCEDURAL POSTURE

Plaintiff was 63 years of age at the time of the ALJ's decision and 61 years of age as of the date her insured status expired. (Tr. 13, 17, 58). Plaintiff successfully completed high school and worked previously as an assembly line worker, cashier, and receptionist. (Tr. 13, 99-104).

Plaintiff applied for benefits on June 4, 2003, alleging that she had been disabled since September 16, 2001, due to a vision impairment, torn muscles in the back, a fractured ankle, and arthritis of the ankle. (Tr. 58-60, 77). Her application was denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 35-57). On June 17, 2004, Plaintiff appeared before ALJ Lawrence Blatnik, with testimony being offered by Plaintiff, Plaintiff's husband, and vocational expert, Rich Riedl. (Tr. 291-330).

In a written decision dated June 25, 2004, the ALJ determined that Plaintiff was not disabled as defined by the Social Security Act. (Tr. 27-32). Specifically, the ALJ found that Plaintiff was limited to sedentary work, but was nonetheless capable of performing her past relevant work as a cashier and receptionist. *Id.* The Appeals Council remanded the matter, however. (Tr. 50-51). Specifically, the Appeals Council found that Plaintiff's previous work as a cashier and receptionist did not constitute past relevant work. The Appeals Council further found that the record did not support the ALJ's determination that Plaintiff was limited to only sedentary work. *Id.*

On February 15, 2005, Plaintiff appeared before ALJ Thomas Walters, with testimony being offered by Plaintiff and vocational expert, James Engelkes. (Tr. 331-57). In a written decision dated April 29, 2005, the ALJ determined that Plaintiff was not disabled as defined by the Social Security Act. (Tr. 13-17). The Appeals Council declined to review the ALJ's decision, rendering it the Commissioner's final decision in the matter. (Tr. 4-6). Plaintiff subsequently appealed the matter in this Court pursuant to 42 U.S.C. § 405(g).

Plaintiff's insured status expired on March 31, 2003. (Tr. 14, 69-75); *see also*, 42 U.S.C. § 423(c)(1). Accordingly, to be eligible for Disability Insurance Benefits under Title II of the Social Security Act, Plaintiff must establish that she became disabled prior to the expiration of her insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

## **MEDICAL HISTORY**

On or about November 1, 2001, Plaintiff sprained her right ankle. (Tr. 133). X-rays of her right ankle, taken on November 3, 2001, were "negative" with no evidence of osseous pathology. (Tr. 157). A November 14, 2001 examination of Plaintiff's right ankle revealed a "little bit" of swelling, but was otherwise unremarkable. (Tr. 133). Plaintiff reported that her ankle pain was "improving." *Id.*

X-rays of Plaintiff's right foot, taken on January 16, 2002, revealed no evidence of fracture or dislocation. (Tr. 156).

On April 22, 2002, Plaintiff was examined by Dr. Marshall Wickens. (Tr. 130). Plaintiff reported that she was experiencing right knee pain. An examination of her knee revealed "maybe a little bit of swelling," but there was no evidence of deformity or bruising. *Id.* X-rays of

Plaintiff's knee were negative with no evidence of joint space abnormality, dislocation, or other osseous pathology. (Tr. 155). Plaintiff was diagnosed with arthralgia of the right knee. (Tr. 130).

On October 1, 2002, Plaintiff was examined by Dr. Daniel Swiriduk. (Tr. 221). Plaintiff reported that she was experiencing pain in her right heel which started approximately one month ago. An examination of Plaintiff's foot revealed that she was experiencing plantar fasciitis.[1] Plaintiff was given an injection and instructed to (1) participate in an icing and stretching program, and (2) wear "good supportive shoes." *Id.*

On July 29, 2003, Plaintiff was examined by Dr. Swiriduk. (Tr. 223). Plaintiff reported that she was experiencing an "exacerbation" of her right foot plantar fasciitis. She reported that the injection she received nine months ago "helped significantly." The doctor provided Plaintiff with a second injection in her right foot. *Id.*

On January 20, 2004, Plaintiff was examined by Dr. Swiriduk. (Tr. 220). Plaintiff reported that she was again experiencing an "exacerbation" of her right foot plantar fasciitis. An examination of Plaintiff's right foot revealed pain with palpation of the medial calcaneal tubercle and medial and central bands of the plantar fascia radiating up into the medial and longitudinal arch. There was no evidence of retrocalcaneal pain or "pain in association with the Achilles tendon." The doctor provided Plaintiff with another injection, noting that Plaintiff "seems to do fairly well with two injections per year." *Id.*

---

[1] Plantar fasciitis is an overuse injury affecting the sole or flexor surface (plantar) of the foot. It results from inflammation of the tough, fibrous band of tissue (fascia) connecting the heel bone to the base of the toes. Exercises to stretch the Achilles tendon and plantar fascia are the primary method of treating this abnormality. This method of treatment is successful for approximately 90 percent of the people who experience plantar fasciitis. *See* American Academy of Orthopaedic Surgeons - Plantar Fasciitis, available at http://orthoinfo.aaos.org/fact/thr_report.cfm?Thread_ID=144&topcategory=Foot (last visited on May 16, 2006).

On April 8, 2004, Plaintiff was examined by Dr. Swiriduk. (Tr. 218). Plaintiff reported that her right foot was doing "okay," but that she was now experiencing pain in her left foot. An examination of Plaintiff's left foot revealed pain with palpation of the medial calcaneal tubercle and medial and central bands of the plantar fascia radiating up into the medial and longitudinal arch. There was no evidence of retrocalcaneal pain or "pain in association with the Achilles tendon." The results of vascular and neurological testing were normal. Plaintiff was diagnosed with plantar fasciitis of the left foot, for which the doctor gave her an injection. *Id.*

On June 17, 2004, Dr. Wickens wrote that Plaintiff experiences "glucose intolerance which is managed well with diet." (Tr. 162). The doctor also reported that Plaintiff experiences back pain occasionally which she manages "by limiting her activity." *Id.*

On July 13, 2004, Plaintiff was examined by Dr. Swiriduk. (Tr. 217). Plaintiff reported that her left foot was "okay," but that the pain in her right foot had returned. An examination of Plaintiff's right foot revealed evidence of plantar fasciitis, as well as Achilles tendon pain. X-rays also revealed the presence of a calcaneal spur. Plaintiff was diagnosed with Achilles tendinitis, plantar fasciitis, and calcaneal spur of the right foot. The doctor instructed Plaintiff to wear a walking cast for a short period of time. *Id.*

On August 10, 2004, Plaintiff reported that she was doing "much better" and was not experiencing "nearly as much pain or discomfort." (Tr. 216). Dr. Swiriduk instructed Plaintiff to participate in physical therapy for "a few weeks." The doctor reported that if physical therapy proved unsuccessful he would consider surgical intervention. *Id.*

Physical therapy was not successful and on September 20, 2004, Plaintiff underwent surgery on her right foot performed by Dr. Swiriduk. (Tr. 215). Specifically, the doctor performed a resection of the heel spur with re-attachment of the Achilles tendon. *Id.*

On October 12, 2004, Plaintiff was examined by Dr. Swiriduk. (Tr. 286). Plaintiff reported that she was doing "relatively well." An examination of her right foot was "normal" with no evidence of Achilles tendon abnormality or osseous prominence. *Id.* A November 16, 2004 examination of Plaintiff's right foot revealed diminished range of motion, but the Achilles tendon was "intact, without any nodules." (Tr. 284). Plaintiff was instructed to begin weightbearing. *Id.*

On January 4, 2005, Plaintiff was examined by Dr. Swiriduk. (Tr. 281). Plaintiff reported that she had been participating in physical therapy for the past three weeks and was getting "progressively better." The doctor observed that her range of motion and muscle strength were improving and that Plaintiff was able to walk (as well as climb stairs) without difficulty. Plaintiff was instructed to continue participating in physical therapy. *Id.*

## ANALYSIS OF THE ALJ'S DECISION

### A. Applicable Standards

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[2] If the Commissioner can make a

---

[2] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1420(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

**B. The ALJ's Decision**

The ALJ found that Plaintiff suffers from the following severe impairments: (1) a muscle disorder of the lumbar spine, (2) plantar fasciitis, and (3) arthritis of the right knee. (Tr. 14). The ALJ concluded that these impairments, whether considered alone or in combination, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. *Id.* The ALJ determined that despite her limitations, Plaintiff was able to perform her past relevant work as an assembler. (Tr. 16). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

**1. The ALJ's Decision is Supported by Substantial Evidence**

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience,

---

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted above, the Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's RFC, the ALJ determined that as of the date her insured status expired, Plaintiff retained the capacity to perform a full range of light work.[3] (Tr. 16). After reviewing the relevant medical evidence, the Court concludes that the ALJ's determination as to Plaintiff's RFC is supported by substantial evidence. A vocational expert testified that given Plaintiff's RFC, she could still perform her past relevant work as an assembler. (Tr. 355).

a. The ALJ Properly Evaluated the Medical Evidence

Plaintiff asserts that because Dr. Wickens and Dr. Swiriduk were her treating physicians the ALJ was obligated to accord controlling weight to their opinions. However, Plaintiff has failed to identify any opinion or statement by either physician which is in conflict with the ALJ's determination that as of the date her insured status expired she was capable of performing her past

---

[3] Light work involves lifting "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567. Furthermore, work is considered "light" when it involves "a good deal of walking or standing," defined as "approximately 6 hours of an 8-hour workday." 20 C.F.R. § 404.1567; Titles II and XVI: Determining Capability to do Other Work - the Medical-Vocational Rules of Appendix 2, SSR 83-10, 1983 WL 31251 at *6 (S.S.A., 1983).

relevant work as an assembler. As detailed above, the medical evidence does not support Plaintiff's assertion that she was disabled prior to the expiration of her insured status. While a July 13, 2004 examination (conducted more than 15 months *after* the expiration of Plaintiff's insured status) revealed that Plaintiff's condition had deteriorated, the evidence prior to that point reveals that Plaintiff's condition was well controlled with conservative measures. Accordingly, the Court finds that the ALJ properly evaluated the medical evidence of record.

                b.    The ALJ Properly Relied on the Vocational Expert's Testimony

Plaintiff asserts that the ALJ relied upon the response to an inaccurate hypothetical question. While the ALJ may satisfy his burden through the use of hypothetical questions posed to a vocational expert, such hypothetical questions must accurately portray the claimant's physical and mental impairments. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996). The hypothetical question which the ALJ posed to the vocational expert simply asked whether Plaintiff, if limited to the extent articulated by her RFC, would be able to perform her past relevant work as an assembler, to which the vocational expert answer in the affirmative. Because there was nothing improper or incomplete about the hypothetical question he posed to the vocational expert, the ALJ properly relied upon her response thereto.

## **CONCLUSION**

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Date:  July 19, 2006                               /s/ Ellen S. Carmody                 
                                                          ELLEN S. CARMODY
                                                          United States Magistrate Judge